Anthony L. Martin
Nevada Bar No. 8177
anthony.martin@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W. Charleston Blvd., Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800
Fax: 702.369.6888
*Attorney for Tribal Amici*

Joseph H. Webster (*Pending pro hac vice*)
jwebster@hobbsstraus.com
Elizabeth A. Bower (Pending *pro hac vice*)
ebower@hobbsstraus.com
Jens W. Camp (Pending *pro hac vice*)
jcamp@hobbsstraus.com
HOBBS, STRAUS, DEAN & WALKER LLP
1899 L Street NW, Ste 1200
Washington, DC 20036
Telephone: (202) 822-8282
*Attorneys for Seminole Tribe of Florida, Lytton Rancheria of California, Agua Caliente Band of Cahuilla Indians, and Mashantucket Pequot Tribal Nation*

Scott Crowell *(Pro hac vice forthcoming)*
scottcrowell@clotag.net
CROWELL LAW OFFICE
Tribal Advocacy Group PLLC
1487 W State Route 89A, Suite 8
Sedona, AZ 86336
Telephone: (425) 802-5369
*Attorney for Rincon Band of Luiseño Indians and Santa Ynez Band of Chumash Mission Indians*

Bryan Newland *(Pro hac vice forthcoming)*
Bryan.Newland@Powerslaw.com
POWERS, PYLES, SUTTER & VERVILLE PC
1250 Connecticut Ave NW, 8th Floor
Washington, DC 20036
Telephone: (202) 349-4265
*Attorney for Rincon Band of Luiseño Indians*

Michael Hoenig (Pending *pro hac vice*)
Michael.Hoenig@sanmanuel-nsn.gov
YUHAAVIATAM OF SAN MANUEL NATION
422 1st Street SE
Washington, DC 20003
Telephone: (909) 936-9684
*Attorney for Yuhaaviatam of San Manuel Nation*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

NORTH AMERICAN DERIVATIVES EXCHANGE, INC. D/B/A CRYPTO.COM | DERIVATIVES NORTH AMERICA,

Plaintiff,

vs.

KIRK D. HENDRICK, et al.,

Defendants.

Case No.: 2:25-cv-00978-APG-BNW

**BRIEF OF INDIAN GAMING ASSOCIATION, CALIFORNIA NATIONS INDIAN GAMING ASSOCIATION, ARIZONA INDIAN GAMING ASSOCIATION, WASHINGTON INDIAN GAMING ASSOCIATION, OKLAHOMA INDIAN GAMING ASSOCIATION, NATIONAL CONGRESS OF AMERICAN INDIANS, NATIVE AMERICAN FINANCE OFFICERS ASSOCIATION, TRIBAL ALLIANCE OF SOVEREIGN INDIAN NATIONS, SAN MANUEL GAMING AND HOSPITALITY AUTHORITY, UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND, AND 24 FEDERALLY RECOGNIZED INDIAN TRIBES AS AMICI CURIAE IN SUPPORT OF DEFENDANTS**



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800

**STATEMENT OF INTEREST**

The Indian Gaming Association ("IGA"), California Nations Indian Gaming Association ("CNIGA"), Arizona Indian Gaming Association ("AIGA"), Washington Indian Gaming Association ("WIGA"), Oklahoma Indian Gaming Association ("OIGA"), National Congress of American Indians ("NCAI"), the Native American Finance Officers Association ("NAFOA"), Tribal Alliance of Sovereign Indian Nations ("TASIN"), San Manuel Gaming and Hospitality Authority ("SMGHA"), United South and Eastern Tribes Sovereignty Protection Fund ("USET SPF"), and 24 federally recognized Indian Tribes ("Amici Tribes")[1] (collectively, "Tribal Amici"), submit this brief as amici curiae.

As described more fully in their Motion for Leave to File Amicus Brief, the Tribal Amici all have a shared, strong interest in this case because of its potential to have a significant impact on their or their member tribes' rights regarding gaming on Indian lands, as well as Indian gaming and tribal governmental revenue as a whole. Such revenue is vital and provides funding for essential government services, tribal programs, and economic development needed to reach the goals of self-governance and self-sufficiency.

**ARGUMENT**

Indian tribes are sovereign nations with primary jurisdiction over their lands and the activities occurring on their lands. In accordance with this principle, both the United States Supreme Court and Congress have recognized tribes' inherent and exclusive sovereign right to conduct and regulate gaming on their Indian lands. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987); 25 U.S.C. § 2701(5). IGRA was enacted to provide a

---

[1] The Amici Tribes include: Agua Caliente Band of Cahuilla Indians; Bay Mills Indian Community; Blue Lake Rancheria; Chicken Ranch Rancheria of Me-Wuk Indians of California; Confederated Tribes of the Grand Ronde Community of Oregon; Confederated Tribes of Siletz Indians of Oregon; Elk Valley Rancheria; Enterprise Rancheria of Maidu Indians of California; Guidiville Rancheria of California; Kickapoo Traditional Tribe of Texas; Lytton Rancheria of California; Mashantucket Pequot Indian Tribe; Morongo Band of Mission Indians; Pechanga Band of Indians; Picayune Rancheria of Chukchansi Indians; Pokagon Band of Potawatomi Indians; Pueblo of Sandia; Rincon Band of Luiseño Indians; Santa Ynez Band of Chumash Mission Indians; Seminole Tribe of Florida; Shingle Springs Band of Miwok Indians, Shingle Springs Rancheria (Verona Tract); Table Mountain Rancheria; Twenty-Nine Palms Band of Mission Indians of California; and Yuhaaviatam of San Manuel Nation.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

comprehensive federal regulatory framework for tribal gaming, including a mechanism for tribes and states to negotiate compacts governing Class III gaming, such as sports betting, subject to federal approval. *See* 25 U.S.C. §§ 2702, 2703(8), 2710(d)(3).

IGRA is intended to balance state, federal, and tribal interests. *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1032 (9th Cir. 2022). Some states have negotiated compacts wherein tribes are the exclusive operators of certain types of gaming within the state. *E.g.*, *Artichoke Joe's v. Norton*, 353 F.3d 712, 718 (9th Cir. 2003). This delicate balance of federal, tribal, and state interests has allowed tribes to generate substantial gaming revenue, which directly funds important tribal government services that benefit tribal citizens.

North American Derivatives Exchange, Inc. ("Crypto.com") unlawfully and unfairly entered into the gaming market, which adversely impacts tribal gaming revenue and infringes upon the benefit of tribes' bargained-for compacts. Additionally, by offering its so-called sports event contracts under the guise of commodity trading pursuant to the Commodity Exchange Act ("CEA"), Crypto.com impedes tribes' inherent sovereign right to regulate gaming activity on Indian lands. Contrary to Crypto.com's arguments: (1) the CEA does not exclusively govern its gaming-related sports event contracts; (2) such contracts are expressly prohibited by the CEA and Commodity Futures Trading Commission's ("CFTC") own regulations; and (3) federal, state, and tribal gaming laws (including IGRA), therefore, apply to and govern its sports wagering activity.

Because Crypto.com has failed to establish that it is entitled to judgment as a matter of law, this Court should deny Crypto.com's motion for judgment on the pleadings.

## I. IGRA Governs Crypto.com's Sports Betting Conduct on Indian Lands

### A. <u>Crypto.com's sports event contracts constitute "Class III Gaming" under IGRA</u>

IGRA advances the longstanding federal policy of promoting and sustaining tribal self-sufficiency. *See* 25 U.S.C. § 2701(4). In this regard, IGRA has been incredibly successful.[2] The revenue generated by tribal gaming supports thousands of jobs in hundreds of communities, and

---

[2] *See, e.g.*, Nat'l Indian Gaming Comm'n, FY 2023 Gross Gaming Revenue Report 4–5 (July 2024), available at https://www.nigc.gov/images/uploads/GGR23_Final.pdf.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

provides critical funding to state and local governments through revenue-sharing agreements, tax revenue, and economic stimulus.

IGRA establishes a three-tier regulatory structure for Class III gaming on Indian lands, providing that such gaming is only lawful if it is: (1) authorized by tribal ordinance or resolution; (2) located in a state that permits such gaming; and (3) conducted in accordance with a tribal-state gaming compact. 25 U.S.C. § 2710(d)(1). IGRA also established the National Indian Gaming Commission ("NIGC") to oversee much of this regulatory regime. 25 U.S.C. § 2704. This regulatory regime is comprehensive, and occupies the entire field of gaming on Indian lands. *See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 63 F.3d 1030, 1033 (11th Cir. 1995) (IGRA was "intended to expressly preempt the field in the governance of gaming activities on Indian lands" (quoting S. Rep. No. 100-446, at 6 (1988)); *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 547 (8th Cir. 1996).

IGRA's implementing regulations define "Class III Gaming" to expressly include "sports betting."[3] 25 C.F.R. § 502.4(c). While the term "sports betting" is not defined therein, it is generally understood to mean:

> [T]he staking or risking by any person of something of value upon the outcome of … a sporting event … upon an agreement or understanding that the person or another person will receive something of value in the event of a certain outcome.

31 U.S.C. § 5362(1)(A) (defining "bet or wager" under the Unlawful Internet Gambling Enforcement Act ("UIGEA")). This is precisely what Crypto.com offers: contracts that stake or risk something of value upon the outcome of a sporting event based on the understanding that the person will receive something of value based on that outcome. Crypto.com does not deny this. Instead, Crypto.com ignores the fact that its sports event contracts are sports bets by another name, and maintains that this Court only needs to conclude that (1) Crypto.com is a designated contract

---

[3] *See* Letter from Kevin Washburn, General Counsel, NIGC, to Joseph M. Speck, Nic-A-Bob Prods., re: WIN Sports Betting Game (Mar. 13, 2001), available at https://www.nigc.gov/images/uploads/game-opinions/WIN%20Sports%20Betting%20Game-Class%20III.pdf ("Because sports betting does not fit into any of the specifically defined categories of Class II gaming set forth above, it is a Class III form of gaming.").

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

market ("DCM") and (2) its sports event contracts are listed for trade as "swaps" on its platform as a DCM. ECF No. 42 at 3, 17. As discussed further below, this argument fails.

But regardless of Crypto.com's preemption arguments, its sports event contracts clearly constitute Class III gaming. Crypto.com has not obtained a license to offer these bets pursuant to tribal ordinance or resolution; nor has Crypto.com been authorized to conduct its sports betting pursuant to any tribal-state compact. Across the board, Crypto.com does not geographically restrict its sports event contracts and, therefore, offers such sports betting on Indian lands without complying with IGRA. Thus, each bet Crypto.com offers on Indian lands violates IGRA, undermines tribal sovereignty, and reduces tribal gaming revenue and government funding.

**B. <u>The CEA does not preempt IGRA</u>**

If taken as true, Crypto.com's argument—that the CTFC has exclusive jurisdiction over its sports betting—necessarily presumes that the CEA preempts IGRA in its entirety. In a similar case before the Maryland District Court, another company offering sports event contracts (Kalshi) attempted to make this argument, stating that even if "IGRA's definition of 'gaming'" encompassed sports event contracts, "the CEA's exclusive jurisdiction provision would displace any attempt by tribes to regulate those contracts." Pl.'s Reply in Supp. of Prelim. Inj. at 7, *KalshiEX LLC v. Martin*, No. 1:25-cv-01283-ABA (D. Md. May 19, 2025), ECF No. 29. Ultimately, the court disagreed with Kalshi and denied its motion for preliminary injunction, which is now on appeal before the Fourth Circuit Court of Appeals. *KalshiEX, LLC v. Martin*, No. 1:25-cv-01283-ABA, 2025 WL 2194908 (D. Md. Aug. 1, 2025).

Congress has been regulating commodity futures for more than a century, historically focusing on agricultural commodities. *See Merrill Lynch v. Curran*, 456 U.S. 353, 357–63 (1982). However, in 2010, Congress amended the CEA, in part, to allow for "event contracts" through the "Special Rule." *See* 7 U.S.C. § 7a-2(c)(5)(C). Recognizing the slippery slope of event contracts, Congress specifically authorized the CFTC to prohibit certain types of event contracts, including those that involve gaming and other activity that is unlawful under federal or state law. *Id.*

Shortly after Congress enacted the Special Rule, the CFTC adopted implementing regulations, whereby it exercised such discretion and explicitly prohibited the listing and trading of

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800

any event contract that "involves, relates to, or references … gaming, or an activity that is unlawful under any State or Federal law." 17 C.F.R. § 40.11(a)(1); *see also* 76 Fed. Reg. 44,776 (July 27, 2011). Thus, in promulgating § 40.11(a)(1), the CFTC made the categorical determination that event contracts involving these specific activities are contrary to the public interest.[4]

Crypto.com's sports betting operation rests entirely on an assumption that it alone has the preemptive authority to self-certify that its gaming activities do not violate the CEA, CFTC regulations, IGRA, or other federal statutes. But it is inconceivable that Congress would have granted a private, for-profit entity the authority to conduct nationwide sports betting—including on Indian lands—without explicitly stating as much, especially in the face of comprehensive statutes and regulations governing gaming on Indian lands. It is axiomatic that "Congress … does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Ignoring this history and longstanding principles of federal statutory interpretation, Crypto.com now presents an alternate reality—one in which a statutory scheme whose scope is limited to addressing the risk, discovery, and dissemination of commodity pricing information, *see* 7 U.S.C. § 5(a)–(b), exclusively governs nationwide sports betting, including that which occurs on Indian lands, thereby preempting the comprehensive regulatory scheme set forth in IGRA. Clearly, this cannot be the case. Any preemptive effect that the CEA has only applies to lawful transactions that fall under the CFTC's exclusive jurisdiction. *See* 7 U.S.C. § 2(a)(1)(A). Crypto.com's sports event contracts are neither.

/ / /

/ / /

---

[4] When announcing its rule, the CFTC clarified:

> [I]ts prohibition of … "gaming" contracts is consistent with Congress's intent [for the CEA's Special Rule] to "prevent gambling through the futures markets" and to "protect the public interest from gaming and other events contracts."

76 Fed. Reg. at 44,786 (citations omitted).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

***1) By its plain language, the CEA does not preempt IGRA***

Crypto.com rests its case on its argument that the CEA grants "exclusive jurisdiction" to the CFTC "with respect to accounts, agreements, … and transactions involving swaps or contracts of sale of a commodity for future delivery …," *id.*, and therefore preempts state law and, by effect, IGRA. However, this exclusive jurisdiction is not universal; this same provision also provides a savings clause, which states, "[e]xcept as hereinabove provided, nothing contained in this section shall … supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission *or other regulatory authorities under the laws of the United States* or of any State …." *Id.* (emphasis added).

The CEA does not expressly preempt IGRA; there is no express statement of Congressional intent for the CEA to preempt any or all of IGRA's provisions. But moreover, the CEA does not preempt IGRA by either field preemption or conflict preemption. First, while Crypto.com may be correct that the CEA could imply *some* preemptive intent, "the fact that the CEA has some field preemptive effect does not mean that the 'field' Congress intended for the CEA to occupy includes state [or federal] gambling laws, and specifically sports wagering laws." *Martin*, 2025 WL at *7.

The CEA does not in any way mention gaming on Indian lands. Rather, by the plain language of the CEA, the "field" that Congress intended to occupy is the commodities trading market (focusing on the risk, discovery, and dissemination of commodity pricing information), *not* Indian gaming. *See* 7 U.S.C. § 5(a)–(b). Indeed, Congress went so far as to enact the Special Rule, which shows a clear Congressional intent to disallow any "gaming" activity at all. That the two only overlap here due to Crypto.com's backdoor attempt to evade comprehensive gaming regulations only emphasizes this point.

Second, the plain language of the CEA does not conflict with IGRA, except to the degree that Crypto.com and others have unlawfully attempted to use it as a means of evading comprehensive gaming regulations. Instead, compliance with both statutory regimes is entirely possible, and nothing within IGRA's requirements to offer Class III gaming on Indian lands obstructs or invalidates the provisions of the CEA.

/ / /

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800

The CEA's savings clause therefore expressly reserves the authority of the NIGC and Tribal gaming authorities over gaming on Indian lands, in accordance with IGRA.

***2) The CFTC expressly prohibits Crypto.com's sports event contracts***

Crypto.com's sports event contracts are categorically prohibited by the CFTC as contrary to the public interest. *See* 17 C.F.R. § 40.11(a)(1). Crypto.com is not authorized to offer such contracts under the CEA and its sports event contracts are therefore invalid and fall beyond the scope of the CFTC's "exclusive" jurisdiction.

The Special Rule grants the CFTC discretion to determine whether event contracts are "contrary to the public interest" if they involve gaming or unlawful activity under federal or state law. 7 U.S.C. § 7a-2(c)(5)(C)(i). When the CFTC makes such a determination, the CEA expressly prohibits those contracts. *Id.* § 7a-2(c)(5)(C)(ii). Here, the CFTC made such a determination when it promulgated 17 C.F.R. § 40.11(a)(1), wherein it categorically prohibited event contracts that "involve[], relate[] to, or reference[] … gaming, or an activity that is unlawful under any State or Federal law."[5]

The CFTC acted consistently with Congress's intent that the Special Rule prevent the usage of event contracts "to enable gambling," particularly sports betting. In fact, as Senator Lincoln—one of the principal architects of the Special Rule—explained:

> [It] is our intent … [that the Special Rule] prevent derivatives contracts that are contrary to the public interest because they exist predominantly to enable gambling through supposed "event contracts." It would be quite easy to construct an "event contract" around sporting events such as the Super Bowl, the Kentucky Derby, and Masters Golf Tournament. These types of contracts would not serve any real commercial purpose. Rather, they would be used solely for gambling.

---

[5] Crypto.com believes that the CFTC regulations entail a two-step process, whereby the event contract must first involve one of the prohibited activities under § 40.11(a)(1) and then the CFTC must separately conduct a 90-day review under § 40.11(c) to determine whether the contract is contrary to the public interest. *See* ECF No. 42 at 10–11, 13. Not so. Instead, § 40.11(a)(1) imposes a categorical prohibition on event contracts involving gaming or unlawful activity. There is no two-step review process needed because the CFTC has *already* determined that such event contracts are contrary to the public interest.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

156 Cong. Rec. S5906–7 (daily ed. July 15, 2010).[6]

Because Crypto.com's sports event contracts involve both gaming and unlawful activity under state and federal law, they expressly violate 17 C.F.R. § 40.11(a)(1) and, therefore, fall outside the scope of the CFTC's exclusive jurisdiction.

Because Crypto.com's sports event contracts constitute sports betting, they therefore necessarily involve gaming in violation of § 40.11(a)(1). *See* Br. of Appellee at 17, *KalshiEX LLC v. CFTC*, No. 24-5205 (D.C. Cir. Nov. 15, 2024), Doc. No. 2085055 ("An event contract … involves "gaming" if it is contingent on a game or a game-related event—like the Kentucky Derby, *Super Bowl, or Masters golf tournament*, all of which were mentioned in the provision's only legislative history." (emphasis added)). For the same reason, Crypto.com's sports event contracts also violate various federal and state laws (as evidenced by the impetus for this litigation). Crypto.com allows users as young as 18 years old to purchase its sports event contracts anywhere nationwide, including on Indian lands. The purchase and sale of these sports event contracts amount to speculative sports wagers, which constitutes gaming activity. Crypto.com's sports event contracts do not comply with the requirements for gaming on Indian lands under IGRA. *See* 25 U.S.C. § 2710(d)(1). Crypto.com's sports event contracts therefore involve unlawful activity under federal law.[7]

---

[6] In an amicus brief filed in the Third Circuit, Senator Lincoln effectively re-affirmed this position, stating: "Congress intended for the CFTC to use the special rule to guard against gambling on the exchanges. *And it contemplated that sports contracts would fall within this regulatory sweep*." Br. of Amici Curiae Former Members of Cong. in Supp. of Pl.-Appellee at 29, *KalshiEX, LLC v. Flaherty*, No. 25-1922 (3d Cir. July 31, 2025), ECF No. 66 (emphasis added).

[7] In addition to IGRA, Crypto.com's sports event contracts also violate other federal laws, including the Wire Act, 18 U.S.C. § 1084, and UIGEA, 31 U.S.C. § 5361. In denying Kalshi's motion for preliminary injunction, the Maryland District Court ruled that Kalshi's proposed interpretation of the CEA "would necessarily entail at least a partial implied repeal of the IGRA and the Wire Act." *See Martin*, 2025 WL at *10.

Furthermore, Kalshi's self-certifications are themselves violations of the CEA. Specifically, Kalshi's self-certifications are "written certification[s] that the new contract … complies with [the CEA] (including regulations under [the CEA])." 7 U.S.C. § 7a-2(c)(1). Because the sports event contracts do not comply with the CEA or the CFTC's regulations—because they involve gaming—Crypto.com's self-certifications attesting otherwise are incorrect and therefore invalid.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

For these reasons, Crypto.com's sports event contracts are not lawful transactions under the exclusive jurisdiction of the CFTC. Therefore, the CEA does not preempt or otherwise conflict with IGRA, and IGRA governs all sports event contracts offered on Indian lands.

***3) Crypto.com's sports event contracts do not qualify as "swaps" or swaps based on "excluded commodities"***

Crypto.com's sports event contracts do not qualify as "swaps" or swaps based on "excluded commodities" and, therefore, are not subject to the CFTC's exclusive jurisdiction. Crypto.com presumes to offer its sports event contracts as "swaps" that are based on "excluded commodities." Under the CEA, a "swap" is defined in relevant part as:

> [A]ny agreement, contract, or transaction … that provides for any purchase, sale, payment, or delivery … that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence.

7 U.S.C. § 1a(47)(A)(ii). Similarly, an "excluded commodity" means, among other things, "an occurrence, extent of an occurrence, or contingency … that is—(I) beyond the control of the parties to the relevant contract, agreement, or transaction; and (II) associated with a financial, commercial, or economic consequence." *Id.* § 1a(19)(iv).

Crypto.com's sports event contracts do not meet these definitions because they are not dependent on the *occurrence* or *nonoccurrence* of a sports event—i.e., whether the sports event occurs[8]—but rather on the *outcome* of the sports event—i.e., which team wins.[9] And although the parties to such contracts presumably have no direct control over which team wins, the contracts fail the second requirement because any "financial, commercial, or economic consequence" that may

[8] An example of what could arguably be a valid "sports event contract" would be: If bad weather is threatening to cause the cancellation of a football game, the owner of the stadium could purchase an event contract that the team will not play their game. This would allow the stadium owner to hedge against the loss of revenue in the event the football game does not occur. This type of contract is not dependent on the *outcome* of the game, but rather on the *occurrence* or *nonoccurrence* of the game.

[9] Ostensibly, Crypto.com presumes that the act of a particular team winning a sports game is the "event" underlying its sports event contracts—not so. The "events" at the heart of *valid* sports event contracts are the sports games themselves.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

potentially be associated with Crypto.com's sports event contracts are related to the *outcome* of the games, not the *occurrence* or *nonoccurrence* of the games. Crypto.com's sports event contracts are not hedging opportunities for interested parties to supplement the risk of a cancelled sporting event; instead, they are merely speculative wagers on the outcome of that sporting event or parts thereof. They are, therefore, not dependent upon, or otherwise related to, any potential "financial, commercial, or economic consequence."

Moreover, the other provisions within the definitions of "swap" and "excluded commodity" provide further insight into Congress's intention when adding the terms to the CEA. *See* 7 U.S.C. §§ 1a(19)(i)–(iii), 1a(47)(A)(i), (iii)–(vi). Specifically, under the canon of *noscitur a sociis*, the potential "financial, economic, or commercial consequence[s]" required under the definition of "swap" or "excluded commodity" must relate to rates, currencies, commodities, securities, instruments of indebtedness, indices, and other such quantitative measures. *Id.* The outcome of a sporting event is not so limited.

***4) The self-certification provisions of the CEA and CFTC regulations are invalid, and therefore Crypto.com's sports event contracts offered pursuant thereto are invalid***

The CEA's self-certification provisions are invalid, rendering both the CFTC's implementing regulations allowing for self-certification and the contracts issued pursuant to those regulations invalid. The statutory and regulatory framework governing new event contracts delegates sweeping authority to private entities to implement binding regulatory decisions without meaningful federal oversight. This violates the nondelegation doctrine, which guards precisely the type of unchecked, privately exercised regulatory power that Crypto.com relies on to list and trade its sports event contracts.

The CEA establishes a self-certification process that permits registered entities to introduce new financial instruments, including event contracts, without prior regulatory approval. This scheme permits private entities, like Crypto.com, to exercise extraordinary regulatory authority—approving, implementing, and launching nationwide sports betting—without any meaningful federal oversight.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

Under well-settled law, Congress may not delegate its legislative powers absent an "intelligible principle" to guide the exercise of discretion. *Gundy v. United States*, 588 U.S. 128, 135 (2019) (citing *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). No intelligible principle exists where "'Congress ha[s] failed to articulate any policy or standard' to confine discretion." *Id.* (quoting *Mistretta v. United States*, 488 U.S. 361, 373, n.7 (1989)). While the Supreme Court routinely upholds congressional delegations of power to federal agencies, it pays particular attention when those delegations are to private entities. *See, e.g.*, *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936). Recently, in *FCC v. Consumers' Research*, 606 U.S. ___, 145 S. Ct. 2482 (2025), the Supreme Court reinforced its nondelegation precedent, finding that the permissibility of a private delegation depends upon whether the agency retains oversight and ultimate decision-making authority over the private entity's actions. In that case, the Supreme Court upheld the delegation to a private entity, determining that it played merely "an advisory role" and the final decision-making authority rested with the agency. *Id.* at 2508.

Here, the self-certification provisions empower private, for-profit entities (like Crypto.com) to define, structure, and launch contracts, which affects the national economy and infringes upon tribal sovereignty.[10] Moreover, the self-certification provisions provide no mechanism for advance public comment, requirement of CFTC findings or review, mandatory agency oversight, or standards by which the CFTC may implement its discretion whether to stay a self-certification.

---

10 Relatedly, Crypto.com's arguments also raise serious issues under the Major Questions Doctrine. *See, e.g.*, *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022) (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000)) (explaining that Congress would not delegate powers of vast economic and political significance in a cryptic fashion); *Nebraska v. Su*, 121 F.4th 1, 14 (9th Cir. 2024) (noting a two-prong framework to analyze the major questions doctrine). Crypto.com's interpretation of the CEA would represent unheralded power for the CFTC and private entities to authorize gaming on Indian lands under a long-extant statute. This interpretation would also have both vast economic and political significance, given Congress's stated goal of facilitating tribal self-determination through regulated gaming on Indian lands *and* the fact that the tribal gaming industry generates more than $43 billion each year. *See* 25 U.S.C. § 2702(1); Press Release, NIGC Announces Record $43.9 Billion in FY2024 Gross Gaming Revenues (July 31, 2025) (available at https://www.nigc.gov/nigc-announces-record-43-9-billion-in-fy-2024-gross-gaming-revenues/#:~:text=MILWAUKEE%2C%20WI.%2C%20July%2031,over%20the%20previous%20fiscal%20year).

Given self-certified contracts may be listed for trading with virtually no review period, *see* 17 C.F.R. § 40.2(a)(2), and Crypto.com is not subject to any meaningful government supervision, these provisions are invalid and the CFTC abdicates its final decision-making authority.[11]

Because the self-certification provisions improperly delegate Crypto.com the authority to perform a core governmental function without any clear guiding principles, standards, or limitations, its sports event contracts listed pursuant thereto are invalid.

### C. <u>The CEA does not impliedly repeal IGRA</u>

By arguing that the CFTC has exclusive jurisdiction over sports betting (including that which occurs on Indian lands), Crypto.com effectively argues that the CEA impliedly repealed IGRA. But Congress did not express the requisite intent for implied repeal. In other words, if the Court accepts Crypto.com's position that its sports event contracts—which constitute sports betting and Class III gaming under IGRA—are subject to the CFTC's exclusive jurisdiction, then the Court must also accept the underlying assumption that Congress intended to upend the entire federal framework for Indian gaming and repeal key provisions of IGRA. *See, e.g.*, 25 U.S.C. § 2710(d)(1). Additionally, IGRA's criminal provisions provide the United States Department of

---

[11] In her recent Farewell Address, CFTC Commissioner Kristin N. Johnson warned in her remarks that "we have too few guardrails and too little visibility into the prediction market landscape." Farewell Address of Commissioner Kristin N. Johnson (Sept. 3, 2025) (available at https://www.cftc.gov/PressRoom/SpeechesTestimony/opajohnson25?utm_source=substack&utm_medium=email).

Commissioner Johnson also warned about "rent or buy" licensing schemes that Crypto.com and others have implemented:

> Finally, the 'rent or buy' my license in derivatives markets is booming as prediction markets promise to eclipse crypto markets in volumes of retail customers' cash captured. The Commission has recently witnessed a number of newly created and legacy firms seeking licenses to offer event contracts. In a number of instances, these businesses approach the Commission seeking licenses to offer traditional products, only to quickly shift once a license is in hand and seek to self-certify prediction market contracts. In other contexts, firms that have received a license quickly auction their newly minted license to others.

*Id.*

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

Justice ("DOJ") with "exclusive jurisdiction" over criminal prosecutions of applicable gambling laws in Indian country, unless a tribe agrees to transfer jurisdiction to the state. 18 U.S.C. § 1166(d). Under Crypto.com's theory, the CEA likewise impliedly repealed DOJ's jurisdiction over such criminal prosecutions.

The Supreme Court applies the "strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a latter statute." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (citing *United States v. Fausto*, 584 U.S. 439, 452, 453 (1988)). Congress's intent to repeal must be "clear and manifest." *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936). "[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). "[T]he only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Id.* at 550 (citing *Georgia v. Pa. R.R. Co.*, 324 U.S. 439, 456–57 (1945)). Further, "the specific governs the general," particularly where "a general permission or prohibition is contradicted by a specific prohibition or permission." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Finally, the Indian Canons of Construction[12] require courts to resolve statutory ambiguities in favor of tribes. *Bryan v. Itasca County*, 426 U.S. 373, 392 (1976).

Applying these same principles to a question of whether a broad statute repeals or amends an earlier Indian statute by implication, the Ninth Circuit has established clear precedent. In *Swinomish Indian Tribal Community v. BNSF Railway*, 951 F.3d 1142 (9th Cir. 2020), the Ninth

---

12 As the Justice Blackmun has explained:

> Because Congress' authority to legislate unilaterally on behalf of the Indians derives from the presumption that Congress will act with benevolence, courts "have developed canons of construction that treaties and other federal action should when possible be read as protecting Indian rights and in a manner favorable to Indians."

*Hagen v. Utah*, 510 U.S. 399, 423 n.1 (1994) (Blackmun, J., dissenting) (quoting Felix Cohen, Handbook of Federal Indian Law 221 (1982 ed.)).

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800

Circuit examined whether a broadly applicable statute regulating railways (the Interstate Commerce Commission Termination Act ("ICCTA")) repealed portions of an earlier statute that was specific to Indian tribes (the Indian Right of Way Act ("IRWA")). There, a railroad operator was violating an easement issued under IRWA. The railroad operator argued that the ICCTA repealed certain provisions of IRWA. The Ninth Circuit noted that "[i]n the context of a statute that touches on federal Indian law, such as [IRWA], there is an additional canon of construction: [S]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Id*. at 1156 (citation omitted).

Applying that canon, the Ninth Circuit held that the ICCTA did not repeal the earlier IRWA on several grounds. First, it found that IRWA expressly applied to railroads, and that Congress did not mention or reference rights-of-way on Indian lands when it enacted the ICCTA. Second, it found that IRWA applied to a very specific circumstance—rights-of-way on Indian lands—whereas the ICCTA applied to railroad regulations broadly. In the absence of clear intention by Congress, the Court held that "a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Id*. at 1160 (quoting *Mancari*, 417 U.S. at 550–51).

The Ninth Circuit has therefore established a clear standard by which courts should evaluate whether a broad statute repeals or amends an earlier Indian statute by implication: they must construe ambiguity liberally in favor of the Indians, and should not infer congressional intent to repeal an earlier, more specific statute governing activities on Indian lands without a clear statement from Congress.

Applying this principle to the CEA, there is no language suggesting that Congress intended to repeal IGRA's regulation of sports betting on Indian lands, let alone "clear and manifest" intent to repeal these key provisions of IGRA. At most, the definition of "swaps" upon which Crypto.com relies is ambiguous as to whether it encompasses sports event contracts of the kind offered by Crypto.com—i.e., sports betting. Ambiguity is not "clear and manifest" intent, and an ambiguous statutory provision cannot overcome the strong presumption against repeals by implication. It also implicates the Indian canon of statutory construction that requires the ambiguous definition of "swaps" to be interpreted in favor of tribes to maintain IGRA and all its

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

provisions.[13] In the absence of explicit congressional intent, this Court should uphold IGRA's very clear, specific, and pervasive regulatory regime for gaming on Indian lands.

Further, the legislative history of the CEA reveals Congress's concern about event contracts facilitating sports betting. As mentioned above, the Special Rule's principal drafter explained Congress intended to prevent gambling via event contracts. 156 Cong. Rec. S5906–7. Rather than demonstrate a "clear and manifest" intent to repeal IGRA, this legislative history shows the exact opposite: Congress designed the Special Rule to *prevent* sports betting through supposed event contracts.

As to IGRA's criminal provisions, Congress likewise did not express a clear and manifest intent to repeal DOJ's authority. In fact, Congress expressly disclaimed such a repeal in the text of the CEA. 7 U.S.C. § 16(e) ("Nothing in this chapter shall supersede or preempt … criminal prosecution under any Federal criminal statute."). It is impossible for the CFTC to exercise exclusive jurisdiction over sports event contracts while the DOJ exercises its exclusive jurisdiction over criminal prosecutions of violations of state gambling laws made applicable by IGRA to Indian lands.

The party arguing that two statues are irreconcilable bears the "heavy burden" of proving congressional intent to repeal. *See Epic Sys. Corp.*, 584 U.S. at 510. Crypto.com cannot meet that heavy burden because there is a reasonable interpretation of the CEA that gives full effect to both statutes: sports event contracts are not subject to the CFTC's exclusive jurisdiction. Because these statutes are capable of coexistence, the court must read them in a way that gives effect to both.

## II. Ignoring the Applicability of IGRA Raises Serious Policy Concerns and Violates Federal Indian Policy

Crypto.com's sports event contracts violate well-established federal Indian policy. The Supreme Court has "consistently recognized that Indian tribes retain 'attributes of sovereignty over both their members and their territory.'" *Cabazon*, 480 U.S. at 207 (quoting *United States v.*

[13] To the extent IGRA grants the NIGC regulatory authority over gaming on Indian lands, Congress likewise did not express its "clear and manifest" intent to repeal that authority. In fact, as noted above, Congress expressly reserved it. *See* 7 U.S.C. § 2(a)(1)(A).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

*Mazurie*, 419 U.S. 544, 557 (1975)). Additionally, "the Constitution grants Congress broad general powers to legislate in respect to Indian tribes," and those powers are "constantly described as plenary and exclusive." *United States v. Lara*, 541 U.S. 193, 200 (2004). "And yet [Indian tribes] remain 'separate sovereigns pre-existing the Constitution.'" *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978)). "A key goal of the Federal Government is to render tribes more self-sufficient, and better positioned to fund their own sovereign functions, rather than relying on federal funding." *Id.* at 810 (Sotomayor, J., concurring) (citing 25 U.S.C. § 2702(1)).

Congress has declared its commitment to supporting Tribal self-determination and self-governance, stating:

> The Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy … [and] to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities.

25 U.S.C. § 5302(b). The Executive Branch has consistently affirmed this policy. *See e.g.*, Exec. Order No. 13175, § 2(c), 65 Fed. Reg. 67,249, 67,249 (Nov. 6, 2000); Exec. Order No. 13647, § 1(a), 78 Fed. Reg. 39,539, 39,539 (June 26, 2013).

In *Cabazon*, the Supreme Court recognized the importance of "the congressional goal of Indian self-government, including its overriding goal of encouraging tribal self-sufficiency and economic development[,]" and noted that federal agencies "ha[ve] sought to implement these policies by promoting tribal bingo enterprises." 480 U.S. at 216–17 (internal quotations omitted). It also acknowledged that tribal casinos often provide "the sole source of revenues for the operation of the tribal governments and the provision of tribal services" and that, in some instances, tribal casinos "are the major sources of employment on the reservations." *Id.* at 218–19. Following *Cabazon*, Congress declared in IGRA that "[t]he purpose of [IGRA] is … to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments …." 25 U.S.C. § 2702(1).

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800

Crypto.com tramples upon established federal Indian policy by usurping the rights of tribes to regulate gaming on Indian land and benefit from such gaming. IGRA mandates that tribes "have the exclusive right to regulate gaming on Indian lands," and that sports betting is "lawful on Indian lands only if … conducted in conformance with a Tribal-State compact…." 25 U.S.C. §§ 2701(5), 2710(d)(1)(C); *see* 25 C.F.R. § 502.4(c). Crypto.com violates this exclusive right. Crypto.com's intrusion is particularly dangerous because it does not comply with any gaming regulations that protect consumers, ensure fairness, or mitigate negative gaming impacts. In fact, Crypto.com's "self-certified" sports event contracts are wholly unregulated by any gaming authority. Crypto.com not only violates IGRA, but strikes at the heart of tribal sovereignty and federal Indian policy by offering what is effectively unregulated nationwide online sports betting. Crypto.com's sports event contracts offered on Indian lands, therefore, diminish tribal bargaining power in compact negotiations and the value of the tribes' bargained-for benefits.

Finally, Crypto.com is siphoning revenue from tribal governments in violation of federal Indian policy. IGRA requires all revenues from tribal gaming be used for governmental or charitable purposes. 25 U.S.C. § 2710(b)(2)(B). As Justice Sotomayor explained in *Bay Mills*: "[T]ribal gaming operations cannot be understood as mere profit-making ventures that are wholly separate from the Tribes' core governmental functions." 572 U.S. at 810 (Sotomayor, J., concurring). Many tribes have come to rely on gaming revenue because destructive former federal policies "left a devastating legacy" on tribes that are "largely unable to obtain substantial revenue by taxing members … [because] there is very little income, property, or sales [that tribal governments] could tax." *Id.* at 812–13 (quoting Matthew L.M. Fletcher, *In Pursuit of Tribal Economic Development as a Substitute for Reservation Tax Revenue*, 80 N.D. L. Rev. 759, 771, 774 (2004)). If Crypto.com continues to offer illegal nationwide online sports betting, the impact on tribal governments will be devastating.

/ / /

/ / /

/ / /

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800

**CONCLUSION**

For the foregoing reasons, the Tribal Amici respectfully request that the Court deny Crypto.com's motion for judgment on the pleadings.

DATED this 15th day of September, 2025.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/ Anthony L. Martin*
Anthony L. Martin
Nevada Bar No. 8177
10801 W. Charleston Blvd., Suite 500
Las Vegas, NV 89135
*Attorney for Tribal Amici*

Joseph H. Webster (Pending *pro hac vice*)
Elizabeth A. Bower (Pending *pro hac vice*)
Jens W. Camp (Pending *pro hac vice*)
Hobbs, Straus, Dean & Walker LLP
1899 L Street NW, Ste 1200
Washington, DC 20036
*Attorneys for Seminole Tribe of Florida, Lytton Rancheria of California, Agua Caliente Band of Cahuilla Indians, and Mashantucket Pequot Tribal Nation*

Scott Crowell (Forthcoming *pro hac vice*)
Crowell Law Office
Tribal Advocacy Group PLLC
1487 W State Route 89A, Suite 8
Sedona, AZ 86336
*Attorney for Rincon Band of Luiseño Indians and Santa Ynez Band of Chumash Mission Indians*

Bryan Newland (Forthcoming *pro hac vice*)
Powers, Pyles, Sutter & Verville PC
1250 Connecticut Ave NW, 8th Floor
Washington, DC 20036
*Attorney for Rincon Band of Luiseño Indians*

Michael Hoenig (Pending *pro hac vice*)
Yuhaaviatam of San Manuel Nation
422 1st Street SE
Washington, DC 20003
*Attorney for Yuhaaviatam of San Manuel Nation*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the foregoing **BRIEF OF INDIAN GAMING ASSOCIATION, CALIFORNIA NATIONS INDIAN GAMING ASSOCIATION, ARIZONA INDIAN GAMING ASSOCIATION, WASHINGTON INDIAN GAMING ASSOCIATION, OKLAHOMA INDIAN GAMING ASSOCIATION, NATIONAL CONGRESS OF AMERICAN INDIANS, NATIVE AMERICAN FINANCE OFFICERS ASSOCIATION, TRIBAL ALLIANCE OF SOVEREIGN INDIAN NATIONS, SAN MANUEL GAMING AND HOSPITALITY AUTHORITY, UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND, AND 24 FEDERALLY RECOGNIZED INDIAN TRIBES AS AMICI CURIAE IN SUPPORT OF DEFENDANTS** to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing, to the following registrants:

Bradley T. Austin
Matthew C. Solomon
Nowell D. Bamberger
Jessica Whelan
Sabrena Clinton

Pursuant to FRCP 5(b), I hereby further certify that service of the foregoing was also made by depositing a true and correct copy of same for mailing, first class mail, postage prepaid thereon, at Las Vegas, Nevada, to the following:

Bradley T. Austin
Snell & Wilmer L.L.P
1700 South Pavilion Center Drive, Ste. 700
Las Vegas, NV 89135

Matthew C. Solomon (Admitted *pro hac vice*)
Nowell D. Bamberger (Admitted *pro hac vice*)
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20037
*Attorneys for Plaintiff*

Jessica Whelan
Sabrena Clinton
Nevada Attorney General's Office
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119

*Attorneys for Defendants The State of Nevada on Relations of the Nevada Gaming Control Board, Kirk D. Hendrick, George Assad, Chandeni K. Sendall & Aaron D. Ford*

DATED this 15th day of September, 2025.

*/s/ Monica Gonzalez*

AN EMPLOYEE OF OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.